**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CASE NO. 5:16-CV-00021-RLV-DCK**

| | |
|---|---|
| TRISTAN COLE CLODFELTER and MICHELE WEAVER, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>ALEXANDER COUNTY BOARD OF )<br>EDUCATION, BRIDGETTE RHYNE, )<br>BROCK WOMBLE, JENNIFER HEFNER, )<br>JEFF PEAL, DOUG RHONEY, BRIAN )<br>LEWIS, JANEL LINGLE, THE TOWN OF )<br>TAYLORSVILLE, DENNIS JAMES, MIKE )<br>MILLSAPS, and RICHARD TAYLOR, )<br>)<br>Defendants. )<br>) | **ORDER** |

**THIS MATTER IS BEFORE THE COURT** on Defendants, The Alexander County Board of Education, Bridgette, Rhyne, Caryn Brzykcy, Brock Womble, Jennifer Hefner, Jeff Peal, Doug Rhoney, Brian Lewis, and Janel Lingle's (collectively the "School Defendants") Motion to Partially Dismiss Plaintiffs' Complaint. (Doc. 20). Having been fully briefed and considered, the Defendants' motion is now ripe for disposition. For the reasons stated below, the School Defendants' Motion to Partially Dismiss (Doc. 20) is **GRANTED IN PART** and **DENIED IN PART**.

**I. BACKGROUND**

For the purposes of this Motion, the Court accepts the following facts derived from the Plaintiffs' Complaint as true. *See Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 189 (4th Cir.2002) (noting that "at the motion to dismiss stage, a court must accept the allegations of the complaint as true and view the complaint in the light most favorable to the plaintiff").

1

During the 2013-14 academic year, Plaintiff Tristan Cole Clodfelter was a student at Alexander Central High School. (Doc. 1 at 2). Plaintiff Michele Weaver is Clodfelter's mother and guardian. *Id.* Two incidents are central to the claims that the School Defendants ask this Court to dismiss. The first incident occurred on February 3, 2014, when a fellow student struck Clodfelter in the head. *Id.* at 11-13. A dispute over Clodfelter's alleged possession of a jacket precipitated the battery on Clodfelter. *Id.* at 11-12. Rather than attending to Clodfelter's medical needs or permitting Alexander County Emergency Medical Services to attend to Clodfelter's medical needs, Defendants Doug Rhoney, Brian Lewis, and Mike Millsaps investigated the cause of the battery by ordering Clodfelter to let them search his vehicle for the jacket.[1] *Id.* at 12-13. The search of Clodfelter's vehicle revealed a knife and drug paraphernalia. *Id.* at 13.

Clodfelter was arrested on charges of possession of a knife on school grounds, theft, possession of drug paraphernalia, and possession of marijuana up to one-half ounce. *Id.* at 13-14. Clodfelter received a ten-day suspension from school (the "February Suspension"). *Id.* at 14. Weaver, on Clodfelter's behalf, sought to appeal the February Suspension but the School Defendants did not promptly respond to Weaver's communications and did not hold any type of hearing regarding the February Suspension. *Id.* at 14-19. After an extension of the end date of his suspension due to an intervening school closing for snow, Clodfelter returned to school on February 21, 2014. *See id.* at 15-16.

The second incident occurred on May 6 and 7, 2014. On both dates, Weaver drove Clodfelter and a fellow student, Chance Richter, to Alexander Central High School. *Id.* at 21. Clodfelter alleges that Lewis confronted him and Richter and searched their belongings because

---

[1] Defendant Doug Rhoney was the principal at Alexander Central High School; Defendant Brian Lewis was an assistant principal at Alexander Central High School; and Defendant Mike Millsaps was a Town of Taylorsville police officer assigned to Alexander Central High School as a school resource officer. (Doc. 1 at 6-7, 9-10).

2

of a Facebook post by Richter. *Id.* The May 6 search revealed no weapons or other contraband. *Id.* An initial search of Clodfelter's school bag on May 7 also revealed no weapons or other contraband but a secondary search of the bag revealed a glass vial containing two marijuana seeds. *Id.* at 22-23. Following this discovery, Lewis and Millsaps attempted to question Clodfelter. *Id.* at 23. Clodfelter declined to answer questions and was released into Weaver's custody. *Id.* Lewis issued Clodfelter a ten-day suspension from school based on the recovery of the glass vile containing the two marijuana seeds (the "May Suspension"). *Id.* Lewis also placed Clodfelter in an Alternative Learning Program (ALP) for the remainder of 2013-14 academic year. *Id.* at 24.

Weaver, on behalf of Clodfelter, attempted to appeal the May Suspension and ALP placement by seeking a hearing before Defendant Jeff Peal, assistant superintendent of the Alexander County School System, and by filing an objection with the Alexander County Board of Education. *Id.* at 24-25. Peal informed Weaver that no right of appeal existed. *Id.* at 24. The Alexander County Board of Education initially scheduled a hearing for June 10, 2014. *Id.* at 25. The hearing was rescheduled for July 2, 2014, and then July 23, 2014, but never occurred because the Alexander County Board of Education conditioned the hearing on Clodfelter consenting to limiting the hearing to fifteen minutes and he declined to consent to the condition. *Id.* at 25-26.

Clodfelter and Weaver filed this seventeen-claim complaint, raising a myriad of federal and state law claims against the Alexander County Board of Education and against the individual Defendants in both in their individual and official capacities. (Doc. 1). Included among the claims was a claim under the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g (Claim Three), and two due process claims for violations of Clodfelter's rights under the Fourteenth Amendment of the United States Constitution and Article 1, Section 20 of the Constitution of the State of North Carolina (Claims Seven and Eight). (Doc. 1 at 28-29, 31-32).

3

Claim Seven involves the School Defendants' alleged failure to permit Clodfelter to challenge the February Suspension while Claim Eight involves the School Defendants' alleged failure to permit Clodfelter to challenge the May Suspension and his placement in ALP. *Id.* at 31-32.

The School Defendants filed a Motion to Partially Dismiss Plaintiffs' Complaint. (Doc. 20). The motion sought dismissal of (1) specified claims against the individual School Defendants in their official capacities on the ground that the claims are redundant because the Alexander County Board of Education is a named defendant;[2] (2) Claim Three on the ground that FERPA does not create a private right of action; and (3) Claims Seven and Eight on the ground that Clodfelter did not have a right to appeal his suspensions or placement in ALP. (Doc. 21 at 4-9). Clodfelter and Weaver voluntarily dismissed the specified claims against the individual School Defendants in their official capacities, as well as Claim Three.[3] (Doc. 22). Plaintiffs, however, contest the School Defendants' motion with respect to the dismissal of Claims Seven and Eight. (Doc. 23 at 1-2). Clodfelter and Weaver argue that the constitutional aspect of Claims Seven and Eight, the cumulative effect of the suspensions and ALP placement, and the Alexander County Board of Education's policies entitled Clodfelter the opportunity to contest and appeal both suspensions, as well as his placement in ALP. (Doc. 24 at 3-10).

## II. DISCUSSION

*1. Standard of Review*

When reviewing a motion to dismiss, this Court must examine the legal sufficiency of the

---

[2] The motion sought dismissal of Claims One, Two, Three, Seven, Eight, Nine, Ten, Twelve, Thirteen, Fourteen, and Sixteen against the individual School Defendants in their official capacities. (Doc. 21 at 4-5).
[3] As Plaintiffs' Complaint only names Caryn Brzykcy as a defendant in her official capacity (Doc. 1 at 4), Plaintiffs' voluntary dismissal of the specified claims as against the individual Defendants in their official capacities effectively dismisses Brzykcy from this matter.

4

complaint; it may not resolve factual disputes or weigh the claims and defenses against one another. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Rather, the court must accept as true all of the well-plead factual allegations contained in the complaint. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A court may, however, determine whether the facts alleged are sufficient, when taken at face-value, to reasonably imply liability on the part of the defendant. In order to survive such a motion, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the factual content allows for the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*

Moreover, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. In order to assert a claim for relief, the complaint must allege facts that imply more than a "sheer possibility that a defendant has acted unlawfully" or "facts that are 'merely consistent with' a defendant's liability[.]" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). Critically, "'[t]he presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal . . . when the facts alleged in the complaint' cannot support the legal conclusion" alleged or the relief sought. *See Migdal v. Rowe Price-Fleming Int'l*, 248 F.3d 321, 326 (4th Cir. 2001) (quoting *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001)). "Legal inferences drawn from the facts, unwarranted inferences, unreasonable conclusions, or arguments are not part of the [court's] consideration." *Dolgaleva v. Va. Beach City Pub. Sch.*, 364 F. App'x 820, 827 (4th Cir. 2010); *see also E. Shore Mkts., Inc. v. J.D. Assocs. LLP*, 213 F.3d 175, 180 (4th Cir. 2000).

*2.     Claim Seven*

Claim Seven of Clodfelter's complaint rests on his assertion that he was denied an opportunity to contest and appeal his February Suspension. (Doc. 1 at 31-32). Claim Seven implicates the actions of Defendants Rhyne, Womble, Hefner, Rhoney, Lewis, and Lingle.[4] Because Clodfelter's suspension was for ten school days, North Carolina law classifies the suspension as a "short-term suspension." N.C. Gen. Stat. § 115C-390.1(b)(12). Under North Carolina law "[a] student is not entitled to appeal the principal's decision to impose a short-term suspension to the superintendent or local board of education." N.C. Gen. Stat. § 115C-390.6(e). Accordingly, North Carolina law does not entitle Clodfelter to the process he claims he was denied and Claim Seven is only viable if some other body of law granted Clodfelter the right to contest or appeal his suspension.

Clodfelter argues that the Fourteenth Amendment grants him a right to contest and appeal the February Suspension, and cites *Goss v. Lopez*, 419 U.S. 565 (1975), in support of his argument. (Doc. 24 at 3-6). In *Goss*, the Supreme Court was confronted with a Fourteenth Amendment Due Process challenge to an Ohio statute that, like N.C. Gen. Stat. § 115C-390.6(e), excluded a suspension of up to ten days from appellate review by a local board of education. *Goss*, 419 U.S. at 567. Each of the nine students in *Goss* were suspended for engaging in various in-school protests during a period of "widespread student unrest in the [Columbus, Ohio, Public School System]." *Id.* at 569. In several instances, a suspension was imposed without the suspending school official informing the student of the facts and conduct that served as the basis for the suspension, without documenting the basis for the suspension in the student's record, or without the student having an

---

[4] Defendant Peal is neither alleged to have assumed a role in the February Suspension nor is he named in Claim Seven. (*See* Doc. 1 at 31-32). Thus, the Court interprets Claim Seven as not arising against Peal.

6

opportunity to contest the suspension through the presentation of facts and evidence in his/her defense. *See id.* at 569-71.

Before reaching its holding, the *Goss* Court recognized that a suspension of ten days was neither de minimus nor insubstantial and that such a suspension "could seriously damage the students' standing with their fellow pupils and their teachers as well as interfere with later opportunities for higher education and employment." *Id.* at 575-76. Thus, due to the "property interest in educational benefits temporarily denied [and] the liberty interest in reputation," the Supreme Court concluded that the Fourteenth Amendment affords students some level of due process when faced with a ten-day suspension. *Id.* at 576-77. In determining the appropriate process due, the Supreme Court noted the competing interests of "avoid[ing] unfair or mistaken exclusion from the educational process" due to errant factual assessments by the school official and the need to impose punishment in schools to maintain order and allow a school to effectively perform its educational function. *Id.* at 579-80; *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 557 (1985) (Brennan, J., concurring in part and dissenting in part) (recognizing "likelihood of governmental error" as interest impacting the timing and form of process due).

Weighing these competing interests, the Court concluded that, under the Due Process Clause, a student facing a ten-day suspension from school is entitled to "oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Id.* at 581; *see also Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 85 (1978) (recognizing this as due process requirement established by *Goss*). In contextualizing this requirement, the Court noted that the notice and the hearing could occur "almost immediately following the misconduct" and that an informal discussion between the disciplinarian and the student satisfies the hearing requirement so long as

the student is "given an opportunity to explain his version of the facts." *Goss*, 419 U.S. 582. Subsequent to *Goss*, the Supreme Court has underscored the potential informal nature that a hearing may take on and the flexibility that accompanies due process in the school suspension setting depending on the facts presented and the charges alleged. *See Horowitz*, 435 U.S. at 86.

At the outset, this Court concludes that nothing in *Goss* required the superintendent staff or the members of the Alexander County Board of Education to grant Weaver's request for a hearing to appeal his February Suspension. This is because a formal hearing before a school official other than the disciplinarian goes far beyond the due process requirements imposed by *Goss*. Furthermore, to the extent Clodfelter contends that the cumulative effect of the February and May Suspensions exceeded ten days and entitled him to greater due process protections than those specified in *Goss*, the argument is inapplicable to the February Suspension as the February Suspension is the first suspension Clodfelter identifies in his complaint. Accordingly, Claim Seven is **DISMISSED** as to Defendants Rhyne, Womble, and Hefner.

While *Goss* did not place any due process requirement on the superintendent staff or the members of the Alexander County Board of Education, it did require that the Defendants at Alexander Central High School provide Clodfelter certain due process protections—notice of the charges and a hearing—when imposing and enforcing the February Suspension. Plaintiffs' Complaint alleges that Clodfelter was present when the knife and drug paraphernalia were recovered from his vehicle and acknowledges that the February Suspension was based on the recovery of these items. Therefore, Clodfelter received adequate notice regarding the charges supporting the February Suspension.

Based on the facts alleged, however, it is plausible that the Alexander Central High School suspension-imposing school officials did not afford Clodfelter the opportunity to contest the

8

charges through the informal hearing he was due. Taking the facts alleged in Plaintiffs' Complaint as true and drawing reasonable inferences therefrom, Clodfelter was taken into police custody and transported to the Alexander County Sheriff's Department following the discovery of the knife and drug paraphernalia. (Doc. 1 at 13). The alleged suspension start date of February 4, 2014 and the paragraphing of Plaintiffs' Complaint permits the inference that Clodfelter received notice of the suspension sometime after his arrest. *See id.* at 13-14. Thus, it is not apparent that Clodfelter had an opportunity to contextualize the presence of the knife and drug paraphernalia in his vehicle at the time the items were discovered.[5] Thereafter, Clodfelter alleges that he and Weaver sought a hearing with officials at Alexander Central High School by way of filing a notice with Defendant Janel Lingle, an assistant principal at the school, and by inquiring of Lewis and of Lingle about his right to contest the suspension. *Id.* at 15-16. The Complaint alleges that these requests were either denied or ignored by Rhoney, Lewis, and Lingle and that no hearing ever occurred. *Id.* Accordingly, Plaintiffs' Complaint alleges the essential elements of a Due Process claim based on the failure of Rhoney, Lewis, and Lingle to afford Clodfelter the opportunity to contest the charges through an informal hearing. Therefore, The School Defendants' Motion to Partially Dismiss is **DENIED** with respect to Claim Seven as to Defendants Alexander County Board of Education, Rhoney, Lewis, and Lingle.

3. *Claim Eight*

---

[5] Although the Court notes the minimal likelihood of error on the part of school officials when suspending a student following the recovery of a weapon or drug paraphernalia from the student's vehicle, it is at least plausible that the student could contextualize the evidence by arguing that he did not know of the items' presence in the vehicle. *See Seal v. Morgan*, 229 F.3d 567, 575-76 (6th Cir. 2000) (concluding that suspension of student who did not knowingly possess a weapon would be irrational and contrary to substantive due process). Furthermore, the denial of a hearing precludes a student from raising arguments in favor of leniency. *See Palmer by Palmer v. Merluzzi*, 868 F.2d 90, 94 (3d Cir. 1989) (noting that hearing provides student opportunity to argue for leniency); *Hatch v. Goerke*, 502 F.2d 1189, 1195 (10th Cir. 1974) (same but within context of expulsion); *see also Ala & Coushatta Tribes of Tex. v. Tr. Of Big Sandy Indep. Sch. Dist.*, 817 F. Supp. 1319, 1335 (E.D. Tex. 1993) (stating that "[a]bsent some extraordinary situation requiring immediate action before a hearing, students are entitled to an opportunity to appear and argue for leniency or special consideration" but doing so within context of one-month suspension).

9

Claim Eight of Clodfelter's complaint rests on his assertion that he was denied an opportunity to challenge and appeal his May Suspension and his placement in ALP. (Doc. 1 at 32). Claim Eight implicates the actions of all of the remaining School Defendants. *See id*. The Court will commence by analyzing Clodfelter's due process rights with respect to the May Suspension first and then analyze his rights with respect to his placement in ALP.

For the reasons relied on when discussing Claim Seven, neither North Carolina law nor *Goss* provided Clodfelter the right to an appellate hearing before the superintendent or the Alexander County Board of Education with respect to the May Suspension. While *Goss* entitled Clodfelter to notice and the right to a hearing with respect to the May Suspension, the Court concludes that Plaintiffs' Complaint alleges facts demonstrating that Clodfelter received the process he was due. Plaintiffs' Complaint states that Clodfelter was present when officials searched his bag and recovered the vial containing the marijuana seeds. *Id.* at 22-23. The Complaint further states that Lewis and several school resource officers attempted to question Clodfelter regarding the vial but that Clodfelter declined to answer any questions or otherwise discuss the matter before contacting an attorney. *Id.* at 23. While Clodfelter certainly was within his right to decline to answer questions or otherwise comment, school officials were not required to wait for Clodfelter to consult with counsel before conducting the informal hearing and issuing the ten-day suspension. *See Zamora v. Pomeroy*, 639 F.2d 662, 668-69 (10th Cir. 1981) (due process requirement satisfied if the student is given an opportunity to explain and dispel charges but opts not to provide explanation). Therefore, Clodfelter received the process he was due under *Goss* as it relates to the May Suspension.[6]

---

[6] Although Clodfelter contends that he was entitled to process beyond that required by *Goss* because of the cumulative effect of February and May Suspensions, Clodfelter fails to cite any case law supporting his contention that the two suspensions should be viewed cumulatively. Furthermore, the alleged facts support the conclusion that the two suspensions stemmed from entirely separate events, several months apart. Finally, where both suspensions were the

10

As to Clodfelter's placement in ALP, Clodfelter first contends that *Rone v. Winston-Salem/Forsyth Cty. Bd. of Educ.*, 701 S.E.2d 284 (N.C. Ct. App. 2010), entitled him to an informal meeting with the superintendent and an appeal before the Alexander County Board of Education. (Doc. 24 at 6-8). Clodfelter correctly reads *Rone* as requiring a formal appeal hearing before the local board of education when a student contests his disciplinary placement in an alternative learning program. *Rone*, 701 S.E.2d at 291-93. However, subsequent to *Rone*, North Carolina enacted N.C. Gen. Stat. § 115C-390.7, which eliminates the right to an appeal before the local board of education from a disciplinary placement in ALP so long as the ALP permits the student "to make timely progress towards graduation and grade promotion." N.C. Gen. Stat. § 115C-390.7(e). Thus, N.C. Gen. Stat. § 115C-390.7 overturns *Rone* and Clodfelter, having not alleged that the ALP placement prevented him from making progress toward graduation, is unable to rely on state law to advance his due process claim.

As for Clodfelter's due process claim under the United States Constitution, the due process protections provided by *Goss* stemmed from the deprivation of a student's property interest in a public education and from the deprivation of a student's liberty interest based on harm to his/her reputation. *Goss*, 419 U.S. at 574-76. When a student, however, is placed in an alternative learning program for disciplinary reasons, he is not denied a public education and his reputation does not suffer the same harm that accompanies a suspension from school. *See Nevares v. San Marcos Consol. Indep. Sch. Dist.*, 111 F.3d 25, 26-27 (5th Cir. 1997) (no deprivation of property interest accompanies placement in alternative learning program); *see also Wise v. Pea Ridge Sch. Dist.*, 855 F.2d 560, 563 n.3 (8th Cir. 1988) (holding that there is a de minimis, deprivation of property and liberty interests from in school suspension such that "due process is not implicated"); *Casey*

---

result of the recovery of contraband, the likelihood of error in imposing the suspensions is sufficiently low that process beyond that mandated by *Goss* and state law is not due.

11

*v. Newport Sch. Comm.*, 13 F. Supp.2d 242, 246 (D.R.I. 1998) (no property or liberty interest involved where student removed from one class and school provided student with alternative qualified instructor for the class). Courts addressing whether the due process requirements adopted by *Goss* apply within the context of challenges to disciplinary placements in alternative learning program have resolved the question in the negative so long as the alternative learning program provides the disciplined student with a meaningful public education opportunity. *Nevares*, 111 F.3d at 26-27; Furthermore, since Clodfelter's placement in ALP did not deprive him of his property interest in a public education, it is not apparent that the combined impact of Clodfelter's suspension and ALP placement entitled him to more process than *Goss* mandates. *See Palmer*, 868 F.2d at 93-94 (student not entitled to process beyond that required by *Goss* where he received ten-day suspension from school followed by sixty-day suspension from football team). This is certainly true given the flexibility that accompanies due process requirements in the school setting and the low likelihood of error on the part of school officials when suspending a student following the recovery of contraband from the student's bag. Therefore, by notifying Clodfelter of the basis for the suspension and ALP placement, and by giving Clodfelter an opportunity to respond to the charges, Lewis provided Clodfelter the process he was due.

Finally, Clodfelter contends that he did not receive the process due to him under Alexander County Board of Education Policy 3470. (Doc. 24 at 8-9). Neither party provided the Court with a true, unabridged copy of Policy 3470; however, from the portions of Policy 3470 quoted in Plaintiffs' response memorandum, the policy required that (1) the superintendent approve the ALP placement, (2) the superintendent hold an informal meeting with Weaver if Clodfelter contested the placement, and (3) the Alexander County Board of Education hold an appeals hearing if Clodfelter requested one. *See id*. Plaintiffs' Complaint alleges that Weaver was denied a meeting

with the superintendent staff and that the Alexander County Board of Education never held the appeals hearing. (Doc. 1 at 24-26). Accordingly, the Complaint pleads sufficient facts to support the contention that Clodfelter did not receive the process he was due under Policy 3470. However, a school system's failure to follow an internal policy that provides more process than is due under the Fourteenth Amendment does not give rise to a constitutional due process claim. *Jacobs v. Clark Cty. Sch. Dist.*, 526 F.3d 419, 441 (9th Cir. 2008); *Martin v. Shawano-Gresham Sch. Dist.*, 295 F.3d 701, 706-07 (7th Cir. 2002); *see also Williams v. Fulton Cty. Sch. Dist.*, 181 F. Supp.3d 1089 (N.D. Ga. 2016); *Hale v. Pringle*, 562 F. Sup. 598, 601-02 (N.D. Ala. 1983). Therefore, the School Defendants' Motion to Partially Dismiss is **GRANTED** as to Claim Eight.

### III. DECRETAL

**IT IS, THEREFORE, ORDERED THAT** the School Defendants' Motion to Partially Dismiss (Doc. 20) is **GRANTED IN PART** and **DENIED IN PART**:

(1) Claim Seven is **DISMISSED** as to Defendants Rhyne, Womble, and Hefner;

(2) The Motion is **DENIED** with respect to Claim Seven as to Defendants Alexander County Board of Education, Rhoney, Lewis, and Lingle; and

(3) Claim Eight is **DISMISSED** in its entirety.

Signed: December 19, 2016

Richard L. Voorhees
United States District Judge